May it please the Court, I am Julie Smith, appearing on behalf of the plaintiffs' appellants, who are collectively referred to in this case as Portland Marche. It is well settled that district courts can enforce complete settlement agreements in cases pending before them, but what district courts cannot do is order parties to complete a settlement agreement, which is what the district court did here. This Court's decision, its 1994 decision in Maynard, illustrates this limitation. In Maynard, the parties had entered into an agreement, the terms of which were that a certain sum of money would be paid and that changes would be made to the employee's file, and that there would be a letter that would be written by the employer relating to how future evaluations would be handled. And that case was reported as settled to the district court, but this Court held that the settlement agreement was not complete, because even though the parties believed that they would work out these details in this letter, the settlement agreement was not complete. This case, of course, involves more than just a letter, the details, working out details in a letter, it involves working out details of the settlement agreement itself, the reinstatement agreement that was contemplated by the settlement agreement, and the terms of a new note. I just want to jump in and ask a factual or practical question at the outset. It's not clear to me just sort of like what, why did this all break down? What are you really fighting over at the end of the day? It seems to be like the loan amount. Well, there were some back and forth. Really, the settlement broke down before we could really get into the details of those things. There was some discussion before the settlement broke down regarding the addition of new terms, including the servicer, adding the servicer as a party. But the reality is that, I mean, that my client walked away from the negotiations. And the district court focused on that part of it. Okay. You're jumping ahead of the question that I'm trying to ask. There must be a practical material term, in your view, that you couldn't reach agreement on, which is why this whole thing fell apart. What is it that caused this whole thing to fall apart? It's not clear on this record why the negotiations fell apart. But I will say to you that even though that's not clear, the reality is that that is not the question. The question is not why did the settlement fall apart. It's was there a settlement to begin with. And that's what the district court focused on, too. The district court was also focused on why did the settlement fall apart? Why did the negotiations break down? But that's not the question. The threshold question is different. Can you focus on the reinstatement agreement? Because I think that's one of your arguments is the parties never reached the terms of the reinstatement agreement. And what is the actual dispute between the parties about what should be in the reinstatement agreement? Well, as I said, really the negotiations didn't get to that point. And at some point when the negotiations were ongoing, my client instructed counsel to suspend negotiations. Then is it even material here? Because if we don't know what it is, if this dispute over reinstatement agreement was over, the real world impact was a difference of $2 million, one way or the other, then maybe it's material. But if we don't know what even the parties are disputing about within the reinstatement agreement, within the settlement agreement, I just don't understand. But again, that's the same mistake, and I do think it's a mistake that the district court made by focusing on where the negotiations broke down and not whether there were terms. Well, what's not agreed to in the reinstatement agreement? What is not agreed to? Well, this reinstatement agreement was the reinstatement agreement. I guess what I want to back up to is, and I know that this is not answering your question in a satisfying way, because I can't tell you exactly what in the ongoing negotiations caused it to break down. I can tell you that my client instructed counsel to suspend continued negotiations. But what I can tell you is that the reinstatement agreement, the settlement required a reinstatement agreement, and that the reinstatement agreement is not just a straightforward, like, standard form contract. It includes a number of complicated parts. Well, I think, I mean, my question, and as I hear it, Judge Lee's question, is sort of getting at the same thing of, if I understand practically what's going on and why it didn't work out, I have, it helps me figure out if there's a material term missing or not. And I think your answer is just, I think your answer is just go back and look at the email and the seven points in the email and you can tell from the face of that that the not everything material is there. Is that your answer? My answer is that, yes, that not everything was material there. And I think what supports that answer is that, first of all, that these seven points contemplated that there would be two separate agreements entered as a condition. I think that's a fair, I mean, I think under the law that's probably a fair answer. It is unsatisfactory because it sort of suggests, is your client games playing here? Like, why don't you want to answer the question of what was the hinge point that made this all fall apart? Well, it's not that I don't want to answer it. I don't actually know it.  But. Counsel, I have to say I've been very, very puzzled by your exchange with Judge Lee and Judge Forrest. Because I'm surprised that you can't just come forward and say, well, there are a number of things here that have not been decided and they haven't been decided. Then they're there. They are material terms. Why can't you tell us, for example, that point four of the seven points, which has to do with what you do with the $560,000, is in dispute as to whether it goes to principle and interest or whether it gets held in suspense against other things. Isn't that a material term that has not been negotiated? Yes. If the district court is ordering you to enforce the agreement, what do you do with that provision? I agree with that point. And so I guess what I need to distinguish is I can't tell you standing here now that that is the reason why the settlement broke down. So that's a different answer. But it was a material term that was not addressed by the seven points. Even if the whole thing broke down over personalities or whether you were having donuts or chocolate chip cookies, it doesn't really matter as long as there's nothing for us to enforce. So I think the big question, at least for me, is, okay, if I affirm the district court here, what gets enforced? I don't know who wins and who loses. I don't know what we do with this term. And that term in particular feels like sort of a high-profile, numbers-based term on which the parties have not agreed as to what you're going to do with the past payments. Right. Yes. True. So let me just separate. I can't tell you why my client walked away, but I can tell you that there were a lot of things up in the air at the time, as Judge Bybee is alluding to. There were two drafts of this reinstatement agreement that were circulated, and I think just if you compare those two drafts to each other, you can see what was up in the air. One thing was that the first draft included all these requirements, these acknowledgements, agreements, and representations from Portland Marché. It required them to obtain certain documents, and it included a borrower's declaration. It added Walker as a party. And then the second draft, and these are a lot of details, and the second draft addressed how, as Judge Bybee has indicated, how the protective advances or how the payments would be allocated, because there was payments made during the litigation, and how those payments would be allocated. And there was, as the email exchange indicates, there was a disconnect between the parties on how that would play out. So I can't tell you why my client backed away, but I can tell you that those are all details that are material. I mean, and I think to give you even some more background, I think this is a—  Sorry. —interrupt you here, but, I mean, looking at the email exchange, and this is to ER-134, there is some back and forth about the reinstatement agreement, but there's no indication any of this is material. I mean, any time you have an agreement, you're going to have back and forth with lawyers. They're going to want certain things changed, certain things not. But are they really material here? And I guess it looks like Fannie Mae's counsel on this whole issue of suspended funds, suspense funds, and swept funds, he clarifies it. Something about $78,000 in funds swept to Fannie Mae is for things like escrow. And then there's no response back from your client on this issue. So, I mean, was there even really any material dispute over here? Because otherwise, if we adopt your position, any party can back away from an agreement in principle by signing to something. So I'm sure lawyers will always disagree about certain things. The question is, was there something missing material such that there was no meeting of the minds? So I don't think you can look at the seven points in the email and discern how those funds are going to be allocated, how the protective advances are going to be dealt with. Protective advances weren't even mentioned in the seven-point email. The money that had been swept wasn't even mentioned in the seven-point email. And so there's – and when we're talking about money, that is the amount of anything is going to be a material term. So that was an unsettled amount. I mean, what's the real-world impact of whether the $78,000 is held for escrow or to apply for protective advances? I mean, is there any – I couldn't tell. It's not even $78,000 at all. Right. I mean, obviously, any time you lower principle, you're going to reduce interest over time, too. So that – I mean, it does material effect the amount of the loan and the amount that's going to be owed, the amount of interest over time. If the real-world impact of this difference was, say, $5,000 over a – whatever, $12.8 million loan, I mean, is that a material difference? Yes. I think it's over $500. I mean, that's – Well, I mean, I don't think that's what we're talking about here. We're talking about – We're talking about what to do with $700,000, which is what the email exchange covers. The last point I'd like to make – and if I can, I'd like to reserve the rest of my time for my rebuttal – is that if – all you have to do is look at the record that talks about the exchange – talks about the reinstatement agreement negotiations when they were in negotiations over potential reinstatement before the lawsuit began. And that can tell you – that, I think, is highly indicative of why not having the terms of a reinstatement agreement spelled out from the outset precludes the court from ruling that this is a complete settlement agreement. And I'll reserve the rest of my time for rebuttal if I can. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Sarah Crooks on behalf of Appellee Fannie Mae. You've asked the relevant questions, and in our view, that the court spent significant time – the trial court – on December 6, 2023 trying to have borrower answer. And they never answered those questions for whatever their reasons are. But I – to start, perhaps, where we left off on the protective advances. In the record, starting at ER – sorry – 3 ER 341 is the loan agreement. This is the document that has governed the party's relationship since the mortgage was funded in April of 2017. And particularly, Article 2 of the loan agreement, which begins on 3 ER 350, provides guidance and rules about how the parties are going to deal with protective advances, suspense funds, acceleration. All of the things that happened in this dispute that began in 2019, we had a set of terms that governed. All right. Can I jump in here? Yes. This gets to the core of my question. Ultimately, at bottom, this case is about a loan contract. And it seems to me that whatever other material terms you might have in a loan contract, you need to know the amount of the loan, the interest rate, and the term. So if I go to the 7 points in the email, how do I calculate those things because they're not set out? So I did exactly what you're saying and thought, all right, well, we'll go back to the original loan agreement and figure out, did it provide all of the rules for how money is going to get allocated? I have two problems with that. One, I'm not sure it's totally clear on some of these suspense and swept categories and how it's going to go. And two, what do we make of the original loan agreement when we're in the context of creating a new agreement because the first one didn't go how the parties anticipated it to go? Well, as the points in the email note, we're going to reinstate the loan that appears in the record. The interest rate was staying the same. The principal amount had not changed. But the agreement also contemplates creating a new note. It did, which would have covered the amount of principal and non-default interest that had accrued during the four years that the lawsuit was pending and the borrower had not paid. Those amounts were known to the parties and could be known, and the interest rate was the same as the mortgage. So what in the record tells us the amount of the new note was known, like to the dollar? Where is that at in the record? I'm not sure that that information is specifically known. The email exchange that was referenced at 2ER134 was part of the discussion about how these amounts were going to be allocated. I'm not sure that there is in the record the amount known. So, Counsel, one problem with the argument that I've heard from you, your argument is, well, we can figure out all of these terms because the original agreement specifies what happens. Does it tell us what happens, what funds get held in suspense, as opposed to what gets applied to principal and interest? We had a large amount where they were paying $64,000 a month into an account. They think you should do one thing with it. You think you should do something else with it. Does the agreement tell us precisely what gets done in this case? If it doesn't, then it seems to me that has to be negotiated. If it does tell us precisely, then it seems to me that you have no problem letting this settlement agreement go and going right back into court because you've got all the law on your side. I mean, this feels like a win-win for you if those terms are fixed. If the terms are not fixed, then I'm not sure we've got a settlement agreement, and it seems that we're back to the races and back before the court to figure out what the right thing is to do. Your Honor, the loan document's quite large, and I'm not familiar with every term in it, so I don't know, and I can't answer the question of whether the suspense funds are specifically laid out how they're allocated. Well, that seems like that's a pretty core term at this point in the litigation. So if we affirm Judge Immergut, and what happens? Who gets what? So I want to go back to the beginning, which are the terms that borrower sent to Fannie Mae through counsel that were the eight terms. Those were the terms that we agreed to, and we then proceeded to document, and we provided, and I think it's also helpful for the court to remember the backdrop. We were a few days from a deadline to file pretrial documents for a trial that was coming up, and in response to the acceptance of those terms, plaintiffs, borrower's counsel contacted the court and told the court we had a final and complete settlement. We then stopped working on our pretrial documents because the court, acting on that information, vacated the trial. We provided draft settlement documents, which included the reinstatement agreement, and we had no feedback from borrower's counsel. We had no notice that there was a concern regarding the suspense funds. After my colleague answered the question in the exchange of emails in 2ER134, the note had been suggested by borrower's counsel after we had reached the deal that perhaps it made sense not to do a new note, but to simply tack on the additional amount of funds that were due to the balloon payment due on May 1, 2024. We had sent— If I can ask a question, just as a practical matter, just assume we say you're right, it can be enforced, send it back to the district court, and the district court, as a practical matter, what would the district court order do with respect, for example, the reinstatement agreement? Would it just kind of look through past agreements, the email exchanges, and say these provisions are the ones that are binding or the parties agreed to? How would it work as a practical matter? So as a practical matter, the reinstatement draft that we sent over, the only concern they raised was that we had included Walker and Dunlap, who was the original originator and then the servicer. They didn't want Walker to be on the reinstatement agreement. We provided our reasons for that, which is in the record. But fine, if we'll take them out and we can provide a new draft. That was the only issue raised to Fannie Mae and to the court during the December 3 hearing. That document, from our perspective, is ready to be executed. Now, the settlement agreement, the only concern raised was the confidentiality provision, which we viewed as a standard term, but we weren't wed to it, so we took it out. And as the court, Judge Immergat, asked repeatedly during the December 3 hearing, what are the material terms that you have a concern with? And they only pointed to a confidentiality provision, which we took out and sent them a new settlement agreement without that term. And on reinstatement, it was whether Walker was a party to that. So they chose not to tell us what other concerns they have now started to talk about on appeal. They didn't tell Judge Immergat about those issues. They didn't complain about the suspense fund or the protective advances to Judge Immergat or to us so that we could have had negotiations about those. Oregon contract law... Has anybody made any attempt to try and settle this case since it's been appealed to us? Numerous times, Your Honor. Numerous times. We've tried to settle this case before it was filed. We tried to settle this case at Judge Immergat's direction after summary judgment. We engaged Magistrate Judge Yu to assist us. We met in person and had a settlement conference. That's in the docket at the very end of the record. We had numerous... Doesn't all that tell us that maybe we're just going to have to go and let the judge decide all of this after trial? It's long. It's expensive. It may not be of benefit to either side. But if things have broken down that far, that even after having Judge Immergat's order here, we can't settle the case, maybe that tells us something. It could tell us a number of things, but... Does it warn us that if we were to affirm Judge Immergat that we might have some kind of noncompliance and then we're back into contempt orders and then we're back here again trying to figure out what the terms of this settlement are? Well... I have a number of thoughts, Your Honor. One of them is that Oregon law requires implicitly that once parties reach the material terms, which we did in the exchange of emails in August, that there's an implicit agreement that you'll bargain in good faith to get the implementation of those terms. That was in Hughes, that was what Judge Immergat relied on, and that is... The violation of that duty gives you what? That gives you a tort? Potentially. You can file a counterclaim? We could, but what Judge Immergat ordered was that there was an enforceable agreement and the parties needed to go negotiate in good faith. And as you heard from Borrowers' Council... There's a difference between ordering parties to negotiate and come to a conclusion and concluding that there's already been a conclusion that simply needs to be enforced. I'd understood that Oregon law allowed the latter but not the former. I can't order you to go back and settle this case. I can recommend strongly that you do so, but I can't order you to do so. I can order you to do so only if you've actually agreed to something and then somebody's backed away from it. As a practical matter, the loan, May 1, 2024, has passed. They walked away from the building. It's currently in receivership. So the reinstatement agreement, as a practical matter, is a moot term. The only terms that matter is the release. And at this point, this court could affirm Judge Immergut and this case would go back and, frankly, it should be resolved. What do you mean the release? The parties agreed to release their claims. There were claims brought by Borrower and there were counterclaims brought by Fannie Mae. So there's going to be no performance of any sort of loan or any sort of liability for non-performance of a loan? I mean, that's what you're saying, release all of that? So we, I'm not entirely sure what the status of the receivership is at this point. I know that if the property is sold and there's a deficiency judgment, there may be an issue there. I, frankly, I'm just not aware of what the status is on how the loan would be, whether the loan would be completely satisfied through a sale or not. Your Honor, the issues that borrowers have raised in their brief are largely unpreserved. Judge Immergut asked repeatedly to know what the material issues were and we only got two issues. Issues raised on appeal should not be considered as material terms because Judge Immergut didn't get a chance to think about it. The Borrower's Counsel Office also, during the course of the December 6th hearing, initially started by saying they didn't need an evidentiary hearing because the facts were clear on the written documents. They then, during the course of that hearing, said that an evidentiary hearing would be required if the judge disagreed with them and they would put on evidence. And in the course of scheduling that evidentiary hearing for the following week, Borrower's Counsel, co-counsel, stood up and told the court that there was no point of an evidentiary hearing because the evidence of what was agreed to was in the written documents that had already been presented with the motion and that there was no other evidence that would substantially change that. As I hear your argument, so the other side says, we don't have agreement, you're going to have to go back to the email with the seven points, which is where we started with having an agreement. As I hear your argument, it seems like you're saying, no, if we have disagreement, you go back to the proposed documents that we circulated after the seven points. Is that a fair characterization of what you're saying we should do? Yes, because the documents that we circulated addressed some of the points within them. And I guess... I'm trying to think through your waiver argument because they clearly said, I think they clearly said to Judge Emmergut, we don't have mutual agreement on all the material terms. There was some reference to the contingency provision and you could deal with that. And then there was a whiff of some other things, but that seems to be their main argument. I guess what's the authority for saying that we back up to the proposed documents and not to the email, which is the basis for the parties having any agreement? I note my time is over. May I answer the question? I believe the authority is Hughes v. Miser, where the court in that case, there was an agreement amongst owners of homes along a road that needed to be paved and they had reached an agreement with however many points there were, which included coming up with written agreements regarding the road and a homeowners association, I believe, or some sort of association. They negotiate and on the eve of those original terms being resolved, there was a deposition that had been scheduled in the near future and that deposition was canceled, which was the objective manifestation of intent for that settlement to be immediately enforceable. The parties then negotiated the terms of those two written agreements and they came to an impasse and tried to resolve those issues and the court ultimately enforced those agreements. And here, we, from our perspective, everything that the borrower asked us to do with respect to those written agreements, we agreed to. And they have not, even today, told us, well, the suspense fund, I would say, they didn't tell us that was an issue and that's coming up on appeal. We believed as of early November that we had reached agreement on the written documents. They had not given us feedback more specifically other than general concerns and they still have not given us written feedback. So those were the objective manifestations of their intent to agree to the eight terms came early on, as well as with those documents. And so those documents are... So that's a waiver argument as opposed to a contract principle or is it both, in your view? I think it's both. Great, thank you. I'd like to begin by addressing the waiver argument. In response to Fannie Mae's motion to enforce the settlement agreement, in the response itself, Portland Marché argued that the relationship between the parties is complex, that the bullet point single page email is unlikely to be... that a bullet point single page email is unlikely to be intended as a binding agreement. Portland Marché referred to the negotiations having previously broke down when it came time to reduce the representations that Fannie Mae had made in writing and argued that ordering the parties to continue to negotiate shows that there is not a complete agreement that this court can summarily enforce. Well, I mean, I need you to answer directly, I guess, Fannie Mae's argument that we had this informal agreement, we went to paper the agreement and create the documents, we shared the documents, and we only got certain objections and none of them were this is the amount of the loan or I disagree with the recited amount of the loan or I disagreed with any of the financial terms. The disagreement was on other issues. Why are they wrong that you have waived your ability to challenge financial terms to this agreement? Well, I mean, it's not correct to say that there wasn't any debate, I guess, over the financial terms because of the email exchanges that were inquiring about how the protective advances would be dealt with and how... Can you point me into the record where you brought that up with Judge Immergitt? Oh, brought up to Judge Immergitt? No, that was not mentioned to Judge Immergitt during the hearing.  But what I'm trying to say is that, like, they said everything else. They said that the fact that there were new terms added to the proposal was... But what if we were to conclude that all of the disagreement about all the other things other than the financial things were not material? And the only thing that is material that we're not certain about has to do with the financial stuff, but you never argued that. Then what? Well, I don't think it's a waiver because, again, these are all tied together. The question for the court right now isn't whether there was a... Again, why the negotiation broke down. The question before the court is, was there material terms, essential terms, in the original agreement? The original proposal did not include all the numbers. It talked about only some of the numbers, and so that is why it is not... You haven't been terribly... So Ms. Cotton represents your client, is that right, at that hearing? Yes. That's your... Okay, that's a lawyer for Portland Marché. Correct. But she does refer to the parties that contemplated doing a new note. She refers a couple of times to doing a new note. But, yeah, it's... I mean, the colloquy with the district court is sort of devoid of numbers. It's devoid of specifics. No, but they repeatedly say over and over again, during the oral argument and in the response to the motion, that the court needs to decide whether the e-mail exchange has contained all the material terms. She says, during oral argument, not all material terms were really decided in those e-mails, and that adding the new terms speaks to the level of detail contained in those e-mails versus the level of detail that really is necessary to consummate a settlement agreement here. She says that the e-mail exchange creates only a roadmap for a settlement agreement. There was no meeting of the minds. That the e-mail says we have to reach... We have to further agree. And the e-mail is only substantial progress toward a settlement. This is certainly close enough for preservation purposes to say that the argument here is that there was not a complete settlement. And I see that I'm over time. I'm sorry. Could I finish my thought? Thank you. I mean, I would just refer the court to some of the Oregon cases that are cited in the briefs, one of which is the Wagner case. The reason why that was not a complete settlement was only because it was subject to the attorney preparing a contract. And in Wilkinson, the reason why that was not a complete settlement or a complete contract was because financing had to be obtained and the terms needed to be approved by the attorney. It doesn't take much. The threshold is not very high, as Fannie Mae is suggesting, for the court to hold that this is not a complete settlement. Unless the court has further questions, we would just ask that you reverse the decision of the district court. Great. Thank you. Thank you both for the helpful argument. The case has been submitted and we're adjourned for the day. All right.
judges: BYBEE, LEE, FORREST